United States District Court
Southern District of Texas
**ENTERED**
February 07, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| RYAN COMPANIES US, INC., § § Plaintiff. § § v. § CIVIL ACTION NO. 3:23-cv-00331 § SOLARJUICE AMERICAN INC. § d/b/a ROOFS4AMERICA, *et al.*, § § Defendants. § | |

## OPINION AND ORDER

Ryan Companies US, Inc. ("Ryan") has filed an amended motion for default judgment. *See* Dkt. 61. The motion is **GRANTED**.

## BACKGROUND

In its Second Amended Complaint, Ryan alleges that on December 3, 2021, it entered into a subcontract with Solarjuice American, Inc. ("SJ America"). Ryan reportedly acted as the general contractor for a project in League City, Texas, with SJ America acting as a roofing subcontractor. According to Ryan, "SJ America's work was supposed to include providing tile roofing, [thermoplastic polyolefin] roofing, a terrace paver system, gutters and downspouts, hoisting equipment, and all incidental trims and accessories." Dkt. 34 at 3. Ryan complains that SJ America did not fulfill its obligations under the subcontract, causing Ryan to suffer monetary damages. Ryan also claims that "SJ America is the alter ego of SolarJuice [Co. Ltd. ("SolarJuice")] such that the Court should pierce the corporate veil" and hold SolarJuice responsible for SJ America's actions. *Id.* at 7.

The law firm of Jones Walker LLP filed an answer on behalf of both SJ America and SolarJuice (collectively, "Defendants"), and a counterclaim for breach of contract on behalf of SJ America. *See* Dkt. 35. On June 17, 2024, Jones Walker LLP moved to withdraw from representing Defendants in this litigation. *See* Dkt. 36. The reason: Jones Walker LLP asserted that Defendants had failed to timely

pay outstanding legal fees. On June 21, 2024, I granted Jones Walker LLP's motion to withdraw and instructed Defendants to retain new counsel no later than July 19, 2024. *See* Dkt. 41 at 2. Despite my admonition, Defendants did not hire counsel by July 19, 2024. On October 29, 2024, Plaintiff requested an entry of default, *see* Dkt. 45, and the Clerk of Court entered default the next day. *See* Dkt. 46. Ryan then moved for a default judgment. *See* Dkt. 48. I denied that motion because Ryan failed to demonstrate that Defendants had been properly served with the motion. *See* Dkt. 60 at 2. Ryan has now filed an amended motion for default judgment and offered evidence indicating that it has properly effectuated service of its motion. *See* Dkts. 61, 62. No opposition to the amended motion for default judgment has been filed, and no attorney has entered an appearance for Defendants—even though more than six months have elapsed since I ordered Defendants to obtain representation.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the clerk's entry of default, a "plaintiff may apply for a judgment based on such default. This is a *default judgment.*" *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A district court may enter a default judgment only if there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The entry of a default judgment is generally committed to the discretion of the district court. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

# ANALYSIS

I must follow a three-part test to determine whether to enter a default judgment. *See United Cmty. Bank, Inc. v. Loven Bf, Inc.*, No. 3:20-cv-00076, 2020 WL 5045310, at *1 (S.D. Tex. July 22, 2020). The test requires me to: (1) "consider whether the entry of a default judgment is procedurally warranted"; (2) "assess the substantive merits of [Ryan]'s claims to determine whether there is a sufficient basis in the pleadings for the judgment"; and (3) "determine what relief, if any, [Ryan] should receive." *Id.*

## A.   A DEFAULT JUDGMENT IS PROCEDURALLY WARRANTED.

To determine whether to enter default judgment, the Fifth Circuit requires district courts examine: (1) whether there are material issues of fact; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by a good faith mistake or excusable neglect"; (5) the harshness of a default judgment; and (6) "whether the court would think itself obligated to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

Applying the Lindsey factors, I conclude that a default judgment against SJ America and SolarJuice is appropriate. First, there are no material issues of fact. Defendants have failed to defend this action. I told Defendants back in June 2024, when Jones Walker LLP withdrew from the case, that they needed to hire new counsel. *See* Dkt. 41 at 2. Defendants have had more than six months to obtain replacement counsel to represent them in this action but have failed to do so. Because Defendants failed to hire representation, the Clerk of Court rightfully entered a default against them for a failure to defend.

"It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). "The right to conduct business in these forms carries with it an obligation to hire a lawyer when the entity is sued." *Alt. Materials, LLC v. TCH Constr. Grp., Inc.*, 339

3

F.R.D. 322, 324 (N.D. Fla. 2021). Against this legal backdrop, district courts across the nation "have found that the continued failure of a corporate or business entity to retain counsel despite the Court's previous orders [to do so] constitutes a failure to defend under Rule 55(a) and warrants the clerk entering default against the corporation or business entity." *U.S. Dep't of Lab. v. Mr. Cao's LLC*, No. 22-1165, 2024 WL 3567341, at *5 & n.4 (D. Kan. Mar. 1, 2024) (collecting cases).

Second, there is no prejudice against Defendants. They were properly served, appeared through counsel, and then failed to hire new counsel when Jones Walker LLP withdrew from the case. Third, the grounds for default are clearly established. Fourth, I am unaware of any good faith mistake or excusable neglect that militates against default. Fifth, I do not find a default judgment to be harsh when Defendants have not bothered to hire new counsel, despite being given months to do so. Sixth, I am aware of no facts that would cause me to set aside the default judgment should it be challenged at a later date.[1]

**B.   THERE IS A SUFFICIENT BASIS IN THE SECOND AMENDED COMPLAINT FOR THE ENTRY OF A DEFAULT JUDGMENT.**

Next, I must assess the substantive merits of Ryan's claims. *See Nishimatsu*, 515 F.2d at 1206. Although Defendants are deemed to have admitted the allegations in the Second Amended Complaint as a result of their default, I must still review the pleadings to determine whether there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Id.* "When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted." *Shaw v. Galo Equip.*

---

[1] Ryan also asks that I dismiss SJ America's counterclaim under Federal Rule of Civil Procedure Rule 41(b), which gives a district court the power to dismiss a claim for failure to prosecute or to comply with the Federal Rules or a court order. *See* FED. R. CIV. P. 41(b). "This authority is based on the 'courts' power to manage and administer their own affairs to ensure the orderly and expeditious disposition of cases.'" *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). For the reasons identified by Ryan in its briefing, dismissal of SJ America's counterclaim is warranted.

*& Constr., LLC*, No. 5-19-cv-00859, 2020 WL 3118928, at *2 (W.D. Tex. June 12, 2020); *see also United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

Ryan is entitled to a default judgment against SJ America because the facts alleged in the Second Amended Complaint state a breach of contract claim upon which relief may be granted. "In Texas, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (cleaned up). The breach of contract allegations set out in the Second Amended Complaint easily satisfy these four elements. Specifically, Ryan alleges: (1) the subcontract at issue is a valid and binding contract; (2) Ryan performed its contractual obligations; (3) SJ America breached its contractual obligations by, among other things, failing to maintain the project schedule and delaying the work on the project, failing to take necessary action to accelerate its work to meet and maintain job progress, failing to provide a remedial recovery plan upon Ryan's request, and failing to order and procure the correct amount of tile roofing material; and (4) Ryan has sustained damages as a result of SJ America's breach of contract. Given these well-pleaded factual allegations, a default judgment is appropriate against SJ America.

Turning to the alter ego allegations against SolarJuice, I find that Ryan has plausibly alleged sufficient facts to state a claim for relief under an alter ego theory. As one Texas appellate court has noted:

> Alter ego comes into play where a corporation is organized and operated as a mere tool or business conduit of another corporation. Alter ego applies when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased and holding only the subsidiary corporation liable would result in injustice.

*Harwood Tire-Arlington, Inc. v. Young*, 963 S.W.2d 881, 885 (Tex. App.—Fort Worth 1998, pet. dism'd by agr.) (cleaned up). "Alter ego is demonstrated 'by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations.'" *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) (quoting *Hideca Petroleum Corp. v. Tampimex Oil Int'l Ltd.*, 740 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1987, no writ)).

Ryan alleges that "SolarJuice owns 100% of SJ America," "SolarJuice made the business decisions for SJ America," and "SolarJuice decided that SJ America would 'pause' its roofing and solar energy system installation business in Texas due to insufficient business volume and profitability." Dkt 34 at 7. These allegations, which SolarJuice has conceded by defaulting, are sufficient to support a default judgment against SolarJuice on the alter ego claim.

C.   **COMPUTATION OF DAMAGES**

Having determined that a default judgment is appropriate, the only remaining issue I must address relates to an award of damages. *See Pope v. United States*, 323 U.S. 1, 12 (1944) (After granting default judgment, it is the district court's duty "to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

First, I note that a district court has "wide latitude" in determining whether an evidentiary hearing should be conducted when awarding damages after a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). When the damages sought can be demonstrated "by detailed affidavits establishing the necessary facts," an evidentiary hearing would serve no useful purpose. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). That is precisely the situation here. Because I can calculate the amount of damages by reviewing the pleadings and supporting documents on file, there is simply no need to "jump through the hoop of an evidentiary hearing." *James*, 6 F.3d at 311.

In support of its claim for monetary damages, Ryan has submitted the affidavit of Trey Featherly, the Project Executive at Ryan who was responsible for managing the work SJ America promised to perform under the subcontract. *See* Dkt. 49. To calculate damages, Featherly first subtracted the subcontract price ($673,415.90) from the cost Ryan incurred in completing the subcontract work ($858,027.08). *See id.* at 2. The difference is $184,611.18. Featherly then applied two credits—a $13,865.53 credit to account for retainage Ryan withheld under the subcontract and an $88,582.73 credit for amounts reimbursed to Ryan. *See id.* at 3. Based on these figures, Featherly determined that Ryan's actual damages for SJ America's breach of contract are $82,162.92.

Ryan has also established that it is entitled to pre-judgment interest on this amount ($82,162.92) from September 23, 2023, until today, February 7, 2025. *See* TEX. FIN. CODE § 304.014 ("[P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered."); *see also* Dkt. 61-1 at 119 (demand letter from Ryan to SJ America dated March 27, 2023). The applicable interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation." *Id.* at § 304.003(c)(1). That interest rate is, as of today, 7.50 percent. *See* Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/h15/ (last visited Feb. 7, 2025). Ryan is thus entitled to $8,492.04 in pre-judgment interest.[2]

Finally, because Ryan has prevailed on a breach of contract claim against SJ America, it is entitled to recover reasonable and necessary attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). An affidavit from Ryan's counsel

---

[2] It has been 503 days since Ryan made a demand for damages. *See* Dkt. 61-1 at 119. The product of $82,162.92 x 0.0750 = $6,162.22 in annual interest, or $16.88 in daily interest. The product of $16.88 x 503 = $8,492.04.

establishes that Ryan incurred $22,915.00 in attorneys' fees, and $1,945.08 in costs of suit and litigation expenses. *See* Dkt. 50 at 11.[3]

## CONCLUSION

For the reasons set forth above, I will enter a default judgment in favor of Ryan against Defendants, jointly and severally, in the total amount of $115,515.04, representing $82,162.92 in actual damages, $8,492.04 in pre-judgment interest, $22,915.00 in attorneys' fees, and $1,945.08 in costs of suit and litigation expenses.

SIGNED this 7th day of February 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] This is the amount of attorneys' fees that Ryan claimed in its first motion for default judgment. I will not award attorneys' fees incurred after that filing because those fees could have been avoided had Ryan properly effectuated service on Defendants. *See* Dkt. 60.